BARRY *v.* STATE.

(Division B. Jan. 8, 1940.)

[192 So. 841. No. 33580.]

Hilton, Berry & Kendall, of Jackson, and **Martin & Farr**, of Prentiss, for appellant.

224

**W. D. Conn, Jr.,** Assistant Attorney-General for the State.

Argued orally by **G. L. Martin**, and **Ovie L. Berry**, for appellant, and by **W. D. Conn, Jr.**, for the State.

**Ethridge, P. J.,** delivered the opinion of the court.

John D. Barry was indicted, tried, and convicted of the crime of embezzlement and sentenced to serve five years in the State Penitentiary, from which judgment he appeals here. The indictment was found under the provisions of Section 889, of the Code of 1930, and it reads as follows: "that John D. Barry on the 23rd day of May, 1938, in the county and district aforesaid being then and there employed as a salesman and agent of A. B. Black and J. H. Walker, doing business under the trade name of Laurel Wholesale Grocery Company, a co-partnership composed of the said A. B. Black and J. H. Walker, and in such capacity as salesman and agent of said co-partnership, was intrusted to collect and receive and have the sum of $3669.41, good and lawful money of the United States of America, of the value of $3669.41, of the personal property of the said A. B. Black and J. H. Walker, co-partners, doing business under the trade name as aforesaid, and being so employed as aforesaid, the said John D. Barry, by virtue of said employment, then and there did collect, receive and take into his possession and have in his possession the sum of $3669.41, good and lawful money of the United States of America, of the value of $3669.41, the personal property of the said A. B. Black and J. H. Walker, co-partners, doing business under the trade name of Laurel Whole-sale Grocery Company, for and on account of the said A. B. Black, and J. H. Walker, co-partners, doing business under the trade name of Laurel Wholesale Grocery Company, the employers of the said Barry, as aforesaid, and the said John D. Barry, at the time and place aforesaid, fraudulently and feloniously did take, make way with, secrete, embezzle and convert to his own use without the consent of the said A. B. Black, and J. H. Walker,

co-partners, doing business under the trade name aforesaid, his employers as aforesaid, the said sum of $3669.41, good and lawful money of the United States of America, of the value of $3669.41, of the personal property of the said A. B. Black and J. H. Walker, co-partners, doing business under the trade name aforesaid, which said sum of money had come into his possession, and under his care and control, by virtue of his employment as aforesaid, and that the said John D. Barry did then and there fraudulently and feloniously embezzle and convert to his own use the said money aforesaid, in the said sum and of the value aforesaid, and of the personal property of the said A. D. Black and J. H. Walker, co-partners doing business under the trade name of Laurel Wholesale Grocery Company, as aforesaid, against the peace and dignity of the State of Mississippi.''

There was no demurrer to the indictment, but there was a motion for a bill of particulars, but no ruling appears in the record as to the said motion for bill of particulars, and no bill of particulars appears in the record. It has been held, however, by this Court that Section 555 of the Code in reference to a bill of particulars is not applicable to a criminal case. It will further be noted that, under Section 1194, the prosecution for embezzlement is not limited to a two-year period, but is one of the excepted cases. The testimony took a wide range and covered many transactions involving various sums of money alleged to have been collected and unaccounted for.

During the empaneling of the jury the district attorney in examining the jurors on their voir dires stated: ''Now Mr. Mack, I believe I was speaking to you, but for the benefit of all you men, if when you take all the testimony and you reach the conclusion, believe beyond a reasonable doubt that John Barry, the defendant in this case, has received a certain sum of money from the customers of the Laurel Wholesale Grocery Company, for the benefit of that company, and then take the other side and find beyond a reasonable doubt that he has not turned that

much money over to the Company, then of course you realize a shortage exists, and it is for the existence of that shortage that this prosecution is instituted—now if you believe beyond a reasonable doubt—.

"Counsel for the defendant: We object to that statement of counsel before the jury as being improper on the voir dire examination.

"By The Court. Overruled.

"Q. If you believe beyond a reasonable doubt from the testimony that Mr. Barry has received more money for the account of the Laurel Wholesale Grocery Company than he turned over to that Wholesale Company, then the Court will instruct you it is your sworn duty to find him guilty, you will follow that instruction of the court will you not? A. (Jurors nod assent.)

"Q. Gentlemen, this is as simple as I can make what is apparently going to be a complicated lawsuit, you understand it is the balancing of accounts, one against the other, and if you believe that a deficiency exists—

"Counsel for defendant: We object, that isn't the case.

"By the Court: That in itself is improper. See what the other question is. Go ahead.

"Q. If you believe from the testimony that this deficiency exists, and the court will charge you, you should find him guilty, do you know of any reason as you sit there now, any of you, why you wouldn't feel like you could pass on that case? A. (Jurors shake heads in negative.)

"Q. You haven't any desire to reach any particular verdict as you sit there now, you are ready to do justice between the State of Mississippi on one hand, and Mr. Barry on the other? You understand he is presumed to be innocent until proven guilty, and if you had to go out now and decide the case, you would find him not guilty, but on the other hand, when you have heard all the testimony, if you believe he is guilty, beyond a reasonable

doubt, will you bring in a verdict of guilty? A. (Jurors nod.)

"Q. None of you have any particular desire to reach a verdict except that which in your mind is a just and true verdict according to the testimony and the law? A. (Jurors shake heads in negative.)"

The Laurel Wholesale Grocery Company, which was a partnership composed of Mr. Walker and Mr. Black, had a number of people employed to solicit business and to collect accounts on behalf of the company. One of these was a partner, Mr. Black, another solicited orders outside the city of Laurel, and the appellant, Mr. Barry, solicited business inside the city of Laurel. There is evidence to show that each of these persons when he went out to solicit orders also carried invoices showing the merchandise already bought and were authorized to and did collect at various times from various customers sums of money on these various accounts. They would take the invoices and the money or checks, as the case might be, to the office of the Laurel Wholesale Grocery Company, and turn them over to the bookkeeper, if he were there, without taking receipts, and the bookkeeper would take the money, checks, and papers, and make entries on the books. Neither the appellant nor any of the others that collected moneys and turned them in had anything to do with the keeping of the books. It was also shown in testimony, and sufficient testimony for the jury to believe, that if the bookkeeper were not in the office, the invoices, with notations on them of moneys collected, and the moneys would be placed in a drawer of a large table in the office, and that the bookkeeper and his assistant and each of the solicitors had access to this table drawer, it not being locked, and no receipts were given by the bookkeeper to the collectors for the moneys so received.

The proof relied upon for conviction was not for the sum of money described in the indictment received at any one time or from any one customer or from any one definite period, but embraced money items of separate debts

and separate customers of the Laurel Wholesale Grocery Company.

The proof for the state covered many pages on the money items and it was shown in the proof that on some days the appellant would collect at two different times during the day, and he testified that he put all of the money and the invoices showing the amount collected in the drawer, in the table, or else turned it over to the bookkeeper, and that he did not retain or keep any of the money.

The record contained some 1141 pages. The testimony of the appellant contained 121 pages, and on cross-examination, the examination was elaborate and frequently the same items would be reasked producing quite an elaborate amount of questions about the same matters, the district attorney returning to items at various parts of the cross-examination about which the appellant had already been asked, and which questions had been answered. Objections to this practice or course of trial were overruled.

During the examination of Mr. Walker, one of the partners, the defendant sought to show by him that he was having domestic troubles and was spending a good deal of money, unusual amounts of money, but the court ruled that these were personal matters of the witness, Walker, and refused to allow the defendant, Barry, to inquire into the extent and the amount of such expenditures and into the domestic affairs of the witness. There was testimony that Walker had access to the table mentioned above in which accounts, moneys, and statements were placed, but there was no evidence to show that Walker actually took any of this money. Appellant also sought to show that the wife of Mr. Walker at the time this alleged domestic trouble existed had stated to the appellant in the presence of appellant's wife that they were fixing to frame Mr. Barry down at the office. Mr. Barry himself testified to this fact, or alleged fact, but it was excluded as hearsay, and the appellant offered to

prove by his wife that such statement was made by Mr. Walker, and the court refused to permit her to so testify. Of course, this was hearsay testimony, and Walker being a partner to the business involved in the suit his wife's testimony would have been incompetent without his consenting thereto. Notwithstanding this evidence was hearsay and immaterial, the court permitted Mrs. Walker to testify in contradiction of Barry as to any such conversation. She testified in contradiction of Barry over objection of the defendant.

After Barry was discharged from employment with the Laurel Wholesale Grocery Company, certain customers of that company who had placed orders with Mr. Barry and paid their accounts by checks were presented with invoices, which, it was claimed by the party presenting them, represented the Laurel Wholesale Grocery Company's outstanding and unpaid accounts. These customers had bought goods from Mr. Barry and had turned over checks to Mr. Barry, and each of these customers was offered to show that such invoices or accounts were presented as being due, which had, in fact, been paid, and they were asked to check the accounts, but upon their statement that the accounts were paid by check, the agent of the Laurel Wholesale Grocery Company requested that they permit him to take the accounts back to the office and have them checked, and that he later returned and stated that the accounts were all right, and had been paid, but the court refused to permit this proof. It appears that these parties were named Bush, Bishop, and Gandy, and they were presented past-due accounts or invoices by an agent and representative of the Laurel Wholesale Grocery Company, and that when they told this representative that they did not pay in money, but rather by check, that he subsequently announced to them that there was nothing due on these accounts.

The following testimony was offered and excluded and thereafter the other two said parties were offered to

testify to like effect. The witness Bush testified as follows:

"Q. Mr. Bush, go ahead and tell the Court exactly what happened to your account. A. Well, when this thing came up I had a statement—so Archie Valentine then came around, so we questioned him so tight about why Mr. Barry didn't come around, so he finally told us, so I said: 'I guess that is the reason for the statement of the account' and he said, 'Well, that is it,' and he said, 'Have you checked it?' and I said, 'No. I didn't never pay any attention to statements anyway. I pay my bills by invoice.' and he said, 'Check it and see if it is short' and I said, 'Well, it might be short—if it is short Mr. Barry did not get any of my money' and he said, 'Well, you don't know. I have heard others say that' and I said, 'Well, I can't help that because I know Mr. Barry didn't get any of my money,' and he said, 'How do you know he didn't?' and I said, 'I pay my bills with checks' and he said, 'Oh, you pay yours with checks' and I said, 'Yes' and he said, 'Well, let me take this statement back. I will see about that' and I said, 'All right.' I should have kept it, but I didn't, so he carried the statement back. That was on Thursday and on Saturday he come back and said, 'Jim Ed, we rechecked yours and yours is all right.' "

Bishop and Gandy were offered to prove similar facts and on objection by the State, the objection was sustained.

It appeared from the evidence that it was claimed by this representative of Laurel Wholesale Grocery Company on the first presentation to Bush that there were three invoices which were not paid, or were short in the language of the agent.

In the instructions to the jury, the court, in the first, instructed the jury as follows: "The court charges the jury for the State that if you believe from the evidence in this case, beyond a reasonable doubt, that John D. Barry, prior to the 23rd day of May, 1938, in the Second Judicial

District of Jones County, State of Mississippi, was employed in the capacity of saleman and agent of A. B. Black and J. H. Walker doing business under the trade name of Laurel Wholesale Grocer Company, a co-partnership, and in such capacity as salesman and agent of A. B. Black and J. H. Walker doing business under the trade name of Laurel Wholesale Grocery Company aforesaid, and as such salesman and agent was intrusted to collect and receive and have the sum of $3669.41 or any part thereof exceeding $25.00, of the good and lawful money of the United States of America, the same being of the value of $3669.41 or part thereof exceeding $25.00, of the personal property of the said A. B. Black and J. H. Walker and as such salesman and agent did collect and receive and have in his possession the sum of $3669.-41 or any part thereof exceeding $25.00 of the personal property of the said A. B. Black and J. H. Walker, doing business as aforesaid, for and on account of said A. B. Black and J. H. Walker, and the said John D. Barry, at the place aforesaid, fraudulently, and feloniously, did take, steal, make way with secrete, embezzle and convert to his own use without the consent of the said Black and Walker, the said sum of $3669.41 or any part thereof exceeding $25.00, property of the said Black and Walker, which said sum of money had come into his possession and under his control and care by virtue of his employment as salesman and agent, and that the said Barry did then and there fraudulently and feloniously embezzle and convert to his own use the said money, then you will find the defendant guilty as charged.''

It will be noted from the reading of this instruction that out of the various and sundry items shown in the proof to have been collected by Barry from various customers, the jury were told that if they found that Barry was agent and salesman and was intrusted to collect and receive the sum of $3,669.41, or any part thereof exceeding $25 of the good and lawful money of the United States etc., that they could return a verdict of guilty.

The state did not pick out particular items but the many and entire items shown in the evidence and instructed the jury that if they believed the appellant received in excess of $25, and had not accounted for it, that they could convict him. It did not tell the jury, nor did any other instruction tell the jury, that all of the jurors must agree upon a particular sum of money. The jury were left to pick any one or more items amounting to an excess of $25 at any time embraced in the evidence, and convict. It was important and vital that the jury be informed that each of them should agree on a particular item or items, constituting the offense. Not only that, but the court instructed for the state as follows: "The court charges the jury that the State is not required to prove that the defendant embezzled the entire sum of $3669.41 as charged in the indictment but is only required to prove that the defendant embezzled a sum exceeding $25.00 before you are warranted in convicting him, and this $25.00 may have been embezzled from one of the accounts testified about and here introduced or may be composed of a total of several items from numerous accounts."

Each juror might pick out under these instructions any particular amount exceeding $25 and base his verdict on that amount while each of his fellow-jurors might select a different item and base their respective verdicts on the other and different items. The mischief of such proceeding is discussed in King v. State, 66 Miss. 502, 6 So. 188, et seq. In the course of its opinion, the Court said [66 Miss. 502, 6 So. 189]: "When there are several offenses, for either one of which the accused may be convicted under the indictment, the prosecution should elect the offense which it will pursue, and the testimony should be confined to that offense, unless the case is within some of the exceptions which render the proof of other distinct offenses admissible."

It is true here that for the purpose of showing motive and intent or to show disposition to commit the offense and the crime of embezzlement, more than one offense

may be proven but the jury should be informed that they must agree on all of them, or on one offense, or on the particular items that constitute the crime. It is not permissible for one to select one item in a series of accounts, and another item, and yet in the general verdict find a conviction. Under the instructions here given this could have been done by the jury because they were told that the state did not have to prove any particular one of the items charged, and about which the evidence was introduced.

It will be further noted from the statute above mentioned, section 889, that the statute does not specifically authorize more than one separate offense and make a conviction of either of them res adjudicata as to all the others, or all offenses proceeding the date of the commission of the particular offense.

In discussing the evil of numerous offenses being introduced, and the possibility of jurors finding separate items or separate offenses and all concur in the verdict of guilty, the Court said:

'But what is of greater consequence to a defendant charged with a single offense, against whom evidence of numerous and different offenses has been admitted, is that, while he is entitled to have the concurring judgment of 12 men against him before he can be lawfully pronounced guilty of the offense with which he is charged, he may in such case be convicted by a divided jury, or by a jury, no two members of which agree that he is guilty of the same offense. If there is evidence of two separate offenses, and the jury may convict of either, six of the jury may believe that the accused is guilty of the first, and not of the second, while the other six may believe that he is guilty of the second offense, and not of the first. The result would be that all the jury would agree that he was guilty, without agreeing on the offense of which he was guilty.

''And if, instead of testimony being produced to establish two distinct offenses, it shows twelve, it is possible

that one juror might be convinced that the defendant was guilty of some particular one of the offenses, and of none other, and thus each juror might be convinced that he was guilty of some particular one of the offenses, and all agree to a conviction, and yet no two jurors be agreed upon any one offense.''

The errors discussed run through a number of the state's instructions and for that reason it was highly important that the district attorney in presenting the law should inform the jury that they must unanimously, that is the entire jury must, agree on the particular offense of which the defendant is believed to be guilty.

It will be noted from the quotation of the district attorney's question in empaneling a jury that it carried the idea with the sanction of the court that if there were a shortage in Barry's account, as that was the question the jury was to decide if they so found, that they would find him guilty, and this view was with the jury at least until the reading of the instructions, and it is true that the defendant, in procuring the instruction, procured an instruction that they must not only believe there was a shortage, but must believe beyond a reasonable doubt that the defendant embezzled the money himself, and if they had a reasonable doubt as to the evidence, or lack of evidence, as to any material allegation in the indictment, having been proven beyond a reasonable doubt, then they must find the defendant not guilty. While the defendant procured many instructions it did not procure any instructions that all of the jurors must agree as to the particular offense of which the defendant is found guilty. The state evidently proceeded upon the theory that the offense was a continuing one, but the instructions nowhere gave the jury the information that there must be a continuous series of transactions coupled up so that it in fact was only one to be relied upon as to convince them that it was a systematic and continuing embezzlement. It was either a systematic and continuing offense constituting one offense or else it was many offenses

separate from each other, and the jury should have given proper instructions to enable them to know the basis upon which they must reason and believe in order to determine that it was a continuing offense, and not many separate offenses committed at different times.

The defendant was refused the following instruction: "The Court charges the jury for the defendant that even though you should believe beyond a reasonable doubt from the evidence that the books and accounts of the Laurel Wholesale Grocery Company show less credits to the accounts of any person as charged in the indictment, than were actually paid to the defendant, J. D. Barry, yet you cannot convict the defendant unless you further believe from the evidence beyond a reasonable doubt that the defendant himself embezzled money belonging to the Laurel Wholesale Grocery Company." The defendant was refused this instruction on the particular facts of this case in the conduct of the trial. We think this instruction should have been given. We are also of the opinion that there was reversible error in this case to exclude the testimony of the three customers above mentioned, Bush, Bishop, and Gandy.

The State's case here depended very largely upon whether the books were correctly kept. If the bookkeeping was incorrect, and if mistakes were made by the bookkeeper, either purposely or innocently, that fact should have been permitted to go to the jury in the evidence. If the testimony of these three witnesses was true, it would show that the books were inaccurately kept, because there is no dispute in the evidence that none of the collecting agents or solicitors or customers of the company were authorized to indorse checks. All the proof to the contrary is that they were not so authorized. It would have appeared from this testimony that the books had not been correctly kept or else that the company was sending out collectors and claiming that the accounts were not paid, which were paid, which would show that the business was not regularly and honestly kept, and

there would, or might, have been a very powerful conflict in the minds of the jury in weighing the testimony.

We also are of the opinion that it was error for the court to permit the defendant to be contradicted as to the statement claimed by the defendant to have been made to him by Mrs. Walker. This was highly prejudicial. It is not permissible to contradict a witness about an immaterial matter. The authorities to that effect are numerous in this state. Here the testimony by Barry in reference to Mrs. Walker's statement that they were fixing to frame Barry should have been excluded in the first instance because it was immaterial and hearsay, but it was erroneous to permit it to be introduced, and then to introduce the witness after the defendant had closed his case to testify to the effect that the witness had not so told Barry.

We are satisfied that the purposes of justice in this case require a reversal and the remanding of the case for a new trial.

Reversed and remanded.